

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

HM/GN/TBM  *271 Cadman Plaza East*
F. #2020R01135  *Brooklyn, New York 11201*

December 8, 2023

<u>By E-mail and ECF</u>

The Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re:   <u>United States v. Aylo Holdings S.A.R.L.</u>
               <u>Criminal Docket No. 23-463 (EK)</u>

Dear Judge Komitee:

      The government respectfully submits this letter in response to the December 1, 2023, letter from Brian Holm, Esq. requesting that the Court recuse itself from the above-captioned matter, ECF No. 3 (hereinafter, the "Letter"), to provide the Court with the requisite background and to correct certain representations made in the Letter.

      I.     <u>Factual Background</u>

      The defendant in this matter, Aylo Holdings S.AR.L. (formerly known as MindGeek S.a.r.l.) (referred to herein as "Aylo Holdings") owns and operates numerous online pornographic websites and brands, including Pornhub.com, that offer visitors the ability to view content uploaded by users, models and third-party adult entertainment companies.  Between 2017 and 2019, Aylo Holdings hosted content from pornography websites GirlsDoPorn.com and GirlsDoToys.com (collectively referred to as the "GDP Websites").  In October 2019, the United States Attorney's Office for the Southern District of California filed a criminal complaint charging several individuals who created, operated and participated in the GDP Websites (the "GDP Operators") with sex trafficking crimes in connection with a scheme to deceive and coerce young women to appear in sex videos.  <u>See</u> No. 19-CR-4488 (S.D. Cal.), at ECF No. 1 (the "California Criminal Case").  In November 2019, a federal grand jury in the Southern District of California returned an indictment against these individuals for, among other charges, sex trafficking offenses.  <u>Id.</u> at ECF No. 34.  Since that time, several of the charged individuals have been convicted in the criminal prosecution.  The criminal prosecution against the remaining defendants in California remains ongoing.   Hundreds of individuals were identified as victims in connection with the criminal prosecution of the GDP Operators (the "GDP Victims").

The U.S. Attorney's Office for the Eastern District of New York (the "government") investigated Aylo Holdings concerning, inter alia, whether Aylo Holdings knew that the proceeds generated by its partnership with the GDP Operators and GDP Websites were from sex trafficking. As a result of that investigation, the government and Aylo Holdings entered into a deferred prosecution agreement ("DPA"), subject to Court approval, relating to an Information alleging that Aylo Holdings engaged in unlawful monetary transactions with the GDP Operators, in violation of 18 U.S.C. § 1957, knowing that the proceeds from the GDP Operators and GDP Websites were from illegal activity. Although the GDP Victims are unlikely statutorily victims of the unlawful monetary transactions at issue under statutes such as the Crime Victims' Rights Act ("CVRA") or Mandatory Victim Restitution Act ("MVRA"), as part of this resolution, Aylo Holdings has agreed to make monetary payments for certain losses that are recoverable as restitution to victims of the GDP Operators who have not otherwise already received compensation for the same losses, and whose images were posted on Aylo Holdings' platforms, pursuant to certain terms and conditions.[1] Aylo Holdings has also, among other things, agreed to be subject to an independent compliance monitor ("Monitor") for a period of three years, subject to the terms of the DPA.

II.     Notification to Persons Who May Be Affected About the DPA

During the course of its investigation, the government learned that many of the GDP Victims separately filed civil lawsuits against the individuals and entities who operated the GDP Websites, as well as Aylo Holdings. Mr. Holm and his firm represent many of the GDP Victims in such lawsuits.

Although the GDP Victims unlikely statutorily fall under the ambit of the victim statutes with respect to this instant case – which proposes deferring prosecution of Aylo Holdings for engaging in unlawful monetary transactions in violation of 18 U.S.C. § 1957 – the government nonetheless has undertaken extensive steps to notify the GDP Victims identified in the California Criminal Case of our proposed resolution against Aylo Holdings, prior to the execution of the DPA in this matter. Specifically, with the assistance of the United States Attorney's Office in Southern District of California, in early October 2023, notification letters were provided to hundreds of individuals who had been identified as GDP Victims in the California Criminal Case. The notification letters sent by the government informed the individuals of among other things, the government's separate investigation into Aylo Holdings, the government's proposed DPA with Aylo Holding to resolve potential charges for violations of 18 U.S.C. § 1957, and the fact that certain terms and conditions in the potential resolution could

---

[1] Determinations as to whether statutes such as the CVRA and MVRA apply are highly fact-specific and largely turn on the specific conduct that is the basis of the offense of conviction. See United States v. Goodrich, 12 F.4th 219, 228 (2d Cir. 2021). Here, for example, Aylo Holdings is not the perpetrator of the underlying specified unlawful activity for the unlawful monetary transactions. Nonetheless, as set forth in detail above, the government has taken steps to notify individuals who may be affected by the resolution and provided them with an opportunity to confer.

benefit them. The notification letters further provided contact information for individuals within the government if the recipients wanted further information.

Following that outreach, many of the notified individuals reached out to the government and either requested additional information or to confer with prosecutors involved in this case. In response, the undersigned substantively conferred with over 30 individuals and/or their legal representatives, including Mr. Holm, about the proposed resolution.

Subsequently, on November 13, 2023, the government filed a notice pursuant to Federal Rule of Criminal Procedure 7(b) requesting the appointment of a district judge, before whom the defendant intended to waive indictment, plead not guilty, and consent to the entry of an Information and the DPA. ECF No. 1. The DPA is currently before the Court and has not been entered as of this date.

### III.  November 30, 2023 Telephone Conference with the Court

Shortly after the government filed the 7(b) notice, on November 22, 2023, the Court's deputy requested that the parties appear by telephone for a short conference on November 30 to discuss a potential conflict. On November 29, 2023, the day before the telephone conference, Mr. Holm contacted the undersigned and asked for information regarding the purpose of the conference. The same day, the government provided Mr. Holm the same information it knew about the conference – i.e., that the Court wanted to speak to the parties about a potential conflict.

On November 30, 2023, the Court held a telephonic status conference, during which it informed the parties that the Court had a pre-existing friendship with one of the attorneys for Aylo Holdings and was contemplating whether recusal was appropriate. The government indicated that it did not believe the circumstances as outlined created a conflict, but understood that the Court was making an independent assessment as to whether recusal was warranted.

### IV.  Plaintiff Counsel's December 1, 2023 Letter

On December 1, 2023, Mr. Holm sent the Letter to the Court, requesting the Court's recusal for three reasons, and also suggesting in a footnote that the government had somehow neglected to fulfill its victim notification obligations by not conferring with Mr. Holm about whether Your Honor needed to recuse himself. The government writes to address certain inaccuracies that form the basis of the Letter so that the Court has the requisite information before it:

First, Mr. Holm represents approximately 130 of the GDP Victims. See Letter at 1. While the Letter purports to be "[o]n behalf of all victims," the government understands Mr. Holm to be advocating on behalf of his clients alone, and not individuals who are separately represented or who are not represented at all. See id. at 2. Indeed, the government has conferred with individuals who were identified as victims in the California Criminal Case who we understand are not represented by Mr. Holm.

3

Second, Mr. Holm suggests that this matter "will require considerable judicial oversight" because "the proposed deferred prosecution agreement requires this Court to decide restitution requests for more than 400 victims and contemplates the Court supervising a corporate monitor at Aylo for the next three years." Id. That is not true. As discussed supra, Aylo Holdings has agreed to make monetary payments for certain losses that are recoverable as restitution to victims of the GDP Operators who have not otherwise already received compensation for the same losses, and whose images were posted on Aylo Holdings' platforms, pursuant to certain terms and conditions.[2] As agreed to by the parties, any dispute as to an individual's eligibility for or the amount of the monetary payment will be determined by the Monitor, not the Court. Moreover, pursuant to the DPA, the Monitor will submit periodic reports directly to Aylo Holdings and the government, not the Court, detailing his/her findings and making recommendations designed to monitor and improve Aylo Holdings' internal processes.

Indeed, because the proposed resolution is a DPA, the government anticipates the Court's involvement to be limited in this matter as compared to other criminal cases that do not resolve via a DPA. As the Second Circuit explained in United States v. HSBC Bank USA, N.A., 863 F.3d 125 (2d Cir. 2017):

> Absent unusual circumstances . . . , a district court's role vis-à-vis a DPA is limited to arraigning the defendant, granting a speedy trial waiver . . . and adjudicating motions or disputes as they arise. . . . Under a typical DPA with a corporate defendant, the defendant admits to a statement of facts, submits to the filing of criminal charges against it on the basis of those facts, and agrees to a forfeiture or fine and to institute remedial measures. In exchange, the government agrees to defer prosecution and to ultimately seek dismissal of all charges if the defendant complies with the DPA. If the government determines that the defendant has breached the DPA, however, the government may rip up the agreement and pursue the prosecution.

Id. at 129. Put another way, a court's role in overseeing a DPA is "not to act as 'superprosecutors,' second-guessing the legitimate exercise of core elements of prosecutorial discretion, but rather as neutral arbiters of the law." Id. at 138 (citation omitted).

Third, as detailed above, the government has, in an abundance of caution, made substantial good-faith efforts to timely and reasonably notify the individuals who may be affected by the DPA in this matter prior to the execution of any agreement with Aylo Holdings. Any suggestion by Mr. Holm to the contrary should be flatly rejected.[3] At this time, the government has only filed a 7(b) notice requesting the appointment of a district judge, before whom the defendant intended to waive indictment and consent to the entry of an Information.

---

[2] This is merely a summary of the relevant provisions of the DPA and does not set forth all the terms and conditions in the agreement.

[3] Moreover, as set forth above, like Mr. Holm, the government was not aware of the basis for the Court's potential conflict until the November 30, 2023 status conference, and accordingly it could not have "fully informed" Mr. Holm of the issue in advance of then. See Letter at 2 n2.

ECF No. 1.  No filing of the Information or criminal arraignment of the defendant has occurred or even been scheduled in this case.[4]

Lastly, Mr. Holm claims that the government failed to confer with the GDP Victims as required under the CVRA before stating that it was "comfortable with the Court handling this matter."  See Letter, at 2 n.2.  Respectfully, Mr. Holm is incorrect.  Even assuming the GDP Victims were statutorily victims under the CVRA for the charge at issue here, the CVRA requires that the government reasonably confer with victims concerning a critical stage or disposition of the case.  Jordan v. Dep't of Justice, 173 F. Supp. 3d 44, 51-52 (S.D.N.Y. 2016).  See also 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.").  Here, determining whether the judge randomly assigned to the instant matter should be recused, where the Court's role will necessarily be prescribed and limited, is not a critical stage of the prosecution.  That being said, the government has, and will continue, to make good-faith efforts to confer with individuals affected by the potential resolution on a going forward basis and will use its resources to ensure that the individuals who qualify for payments under the DPA receive them in a timely manner.

* * * * *

The government remains available to answer any questions the Court may have or to provide additional information.

Very truly yours,

BREON PEACE
United States Attorney

By:       /s/
Hiral Mehta
Genny Ngai
Tara McGrath
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of Court (EK) (by email)
      Defense Counsel (by email)
      Brian Holm, Esq. (by email)

---

[4] The government will notify the individuals who may be affected by the potential resolution of the date/time of the DPA proceeding, once scheduled.

5