DCP:HDM/GN/GK/TBM
F. #2020R01135

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

AYLO HOLDINGS S.À.R.L., formerly
known as "MindGeek S.à.r.l.,"

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Filed: December 21, 2023

I N F O R M A T I O N

Cr. No. 23-CR-463 (BMC)
(T. 18, U.S.C., §§ 982(a)(1), 982(b)(1),
1957 and 3551 et seq.; T. 21, U.S.C.,
§ 853(p))

THE UNITED STATES CHARGES:

## INTRODUCTION

At all times relevant to this Information, unless otherwise indicated:

I.    The Defendant and Relevant Entities and Individuals

    1.    From in or about and between January 2009 and December 2020, MindGeek was a global, privately held group of entities (including MindGeek USA, Inc., MG Freesites Ltd. and MindGeek S.à.r.l.), the business of which included the maintenance and operation of websites that enabled third parties to post and distribute adult videos.  MindGeek owned and operated numerous pornographic websites and brands including Pornhub.com ("Pornhub").  MindGeek's websites were accessible within the United States through an internet connection, including in the Eastern District of New York.

    2.    MindGeek S.à.r.l. was the ultimate corporate parent company for MindGeek USA, Inc. and MG Freesites Ltd.  MindGeek S.à.r.l. was a foreign entity organized and existing under the laws of Luxembourg.  Although its corporate headquarters was in

Luxembourg, MindGeek also had offices with employees in Montreal, Canada, and, among other places, Los Angeles, California.

3. MindGeek offered to the public both free and paid adult websites. MindGeek allowed users to access content for free on certain of its websites, including on Pornhub, YouPorn.com, RedTube.com, Tube8.com and Thumbzilla.com (collectively the "Free Sites"). Pornhub was MindGeek's flagship video-sharing platform and its leading free, ad-supported, adult content hosting and streaming website, offering visitors the ability to view content uploaded by users, models and third-party adult entertainment companies. MindGeek also owned or operated websites that required users to purchase a membership to access their content. These sites included the MindGeek-owned PornhubPremium.com ("Pornhub Premium"), YouPornPremium.com and RedTubePremium.com (collectively, the "Premium Sites"), which provided paid subscribers with additional, exclusive model or third-party-studio-produced content in an ad-free environment behind a paywall.

4. MindGeek offered third-party adult entertainment companies the ability to become content partners ("Content Partners") and members of its content partner program ("Content Partner Program"). Content Partners were generally third-party adult entertainment companies that operated their own website(s), which offered content to users for a fee or via paid subscription. Under the Content Partner Program, when a third-party entertainment company signed up to be a Content Partner with MindGeek, MindGeek offered the Content Partner separate webpages that included channels on Pornhub and its other Free Sites. Content Partners could upload content onto the Free Sites, and place advertisements on their channels and video watch pages with links to the Content Partners' websites. MindGeek promoted the Content Partners to its users. For example, each personalized channel contained a link to the Content

2

Partner's website. These advertisements and links directed users to go to the Content Partner's website where they could be converted to paying members of the Content Partner's website. When a user referred through such advertisements or links purchased a subscription to the Content Partner's website, where applicable, MindGeek earned a commission, or a share of the revenue earned by the Content Partner.

5. MindGeek also offered its Content Partners the ability to join a view share program ("View Share Program") for Pornhub Premium by signing a content license agreement. The View Share Program was designed for Content Partners to promote their content and help them earn revenue based on views of their content by subscribers of Pornhub Premium. Under the View Share Program, the Content Partner could upload videos that were locked behind a paywall and thus only available to users who purchased a subscription. Content Partners in the View Share Program were compensated based on views of their videos. MindGeek helped drive users to the Content Partners by, among other things, promoting links to its users to join the Content Partners' pay-sites.

6. GirlsDoPorn.com ("Girls Do Porn" or "GDP") was a pornography website featuring videos of young women from 18 to 23 years old engaging in sexual intercourse with a male actor. GDP promoted the women in the videos as amateur college-aged women filming pornography for the first time. GDP's channel on Pornhub advertised: "Real amateur girls having sex on video for the very first time . . . . You will not find these girls on any other website - all girls are 100% exclusive - this is the one and only time they do porn." GDP earned money by selling subscriptions to view the complete video content in its members-only section. The Girls Do Porn channel on MindGeek's platforms, including Pornhub, was popular,

with more than 700,000 subscribers and more than 60 million unique page views during the relevant time period.

7. GirlsDoToys.com ("Girls Do Toys" or "GDT") was a pornographic website featuring young women in "solo" scenes (i.e., using sex toys). GDT videos featured many of the same women who appeared in GDP videos. The GDT channel on MindGeek's platforms had more than 780,000 unique page views between January 2009 and December 2020.

8. Michael James Pratt ("Pratt") and Matthew Wolfe ("Wolfe"), both citizens of the United States, together with others (collectively, the "GDP Operators"), ran an online pornography business in which they operated several pornography websites, including Girls Do Porn and Girls Do Toys. The GDP Operators used numerous entities to operate their pornography enterprise, including the following: BLL Media, Inc.; BLL Media Holdings, LLC; Domi Publications, LLC; and M1M Media, Inc.

9. The GDP and GDT videos hosted by MindGeek were accessible in, and were, in fact, accessed by, users within the Eastern District of New York.

II. The Unlawful Monetary Transactions

10. In or about and between September 15, 2017 and October 2019, MindGeek operated and hosted GDP and GDT content on its Free Sites, including on Pornhub, and knowingly received payments of approximately $106,370.05 through United States financial institutions, from the GDP Operators. Those proceeds were criminally derived from the GDP Operators' sex trafficking. All the above-mentioned monetary transactions occurred in the United States, including in the Eastern District of New York. Moreover, between September 2017 and December 2020, MindGeek received payments from advertisers attributable to GDP and GDT content totaling approximately $763,890.72.

     A.     <u>Contractual Relationships Between GDP Operators and MindGeek</u>

     11.     Beginning in or about 2009, Pratt joined MindGeek's Content Partner Program. On or about December 2, 2015, BLL Media, Inc. entered into a content license agreement ("Content License Agreement") with MindGeek. Pratt signed the contract on behalf of BLL Media, Inc.

     12.     On or about March 4, 2016, Domi Publications LLC entered into a Content License Agreement with MindGeek. Pratt also signed the contract on behalf of Domi Publications LLC.

     13.     In 2016, Wolfe joined MindGeek's Content Partner Program. On or about October 11, 2016, M1M Media, Inc. entered into a Content License Agreement with MindGeek. Wolfe signed the contract on behalf of M1M Media Inc.

     14.     Pursuant to the above Content License Agreements, in or about and between September 14, 2009 and October 14, 2019, MindGeek created and operated GDP channels for Pratt and the GDP Operators on its Free Sites, including on Pornhub. In or about and between January 28, 2016 and December 16, 2020, MindGeek also created and hosted a GDT channel for Wolfe and the GDP Operators on its Free Sites, including on Pornhub. The GDP and GDT channels contained mostly 5- to 7-minute clips of videos filmed by the GDP Operators and included links to their paid websites so that users could access the full videos.

     B.     <u>GDP Lawsuit</u>

     15.     In June 2016, multiple plaintiffs filed a civil lawsuit in San Diego Superior Court against Pratt, Wolfe, Ruben Andre Garcia ("Garcia"), BLL Media, Inc., BLL Media Holdings, LLC, Domi Publications, LLC, M1M Media, LLC and others alleging that the civil defendants had tricked the plaintiffs into appearing in pornographic videos posted to Girls Do Porn (the "GDP Lawsuit"). The complaint alleged, among other things, that the civil defendants

5

had offered the plaintiffs money for adult film work and assured them that the civil defendants would not post the videos online or distribute the videos within the United States, and would keep the plaintiffs' identities anonymous. The complaint further alleged that the civil defendants coerced the plaintiffs into signing consent release forms and having sex with one of the civil defendants. Moreover, the complaint alleged that some of the plaintiffs' videos had been posted to Pornhub without the plaintiffs' consent.

16. MindGeek was notified of the GDP Lawsuit, at the latest, on or about September 15, 2017, after it received a subpoena for production of business records from plaintiffs' counsel in the GDP Lawsuit.

17. Separately, after the filing of the GDP Lawsuit, between August 2016 to August 2019, MindGeek received at least 15 content removal requests, from at least 11 complainants seeking to have Pornhub remove GDP videos on its platform. The complainants stated that videos in which they appeared had been posted on Pornhub without their consent and that the producers who made the GDP videos lied to them about not posting the videos online. Some of the content removal requests also made reference to the GDP Lawsuit. MindGeek sought, and received, information from GDP that purported to establish that the complainants had given consent for their videos to be posted online, but MindGeek did not independently verify consent. MindGeek removed some, but not all, of the GDP videos as requested, including as follows:

(a) For example, on or about August 29, 2016, a complainant asked Pornhub to remove a GDP video, stating that GDP "made me believe that this will be distributed to foreign countries to private members only. It has strongly impacted my professional and social life." Pornhub did not remove the requested video and instead responded that the "following

video(s) was/were uploaded by one of our Content Partners as part of our Content Partner Program" and directed the complainant to submit a Digital Millennium Copyright Act ("DMCA") takedown notice if she felt that the video violated copyright and wished to pursue the video removal.

    (b)  On or about October 19, 2018, a complainant submitted a content removal request to Pornhub asking Pornhub to remove a video, stating that she "did not agree to have this content on pornhub."  Later that day, Pornhub informed the complainant that the video would be removed.

    (c)  On or about November 1, 2018, a complainant submitted a content removal request to Pornhub asking the company to remove four videos.  In the complaint, the writer stated that the individual in the video was her friend and that her friend was "lied to," told "it would never go online," and "never told [] the company they work for."  In response, Pornhub stated that the complainant needed to "contact girls do porn to have the video removed, because the video is sponsored content."

    (d)  On or about March 2, 2019, a complainant submitted a content removal request to Pornhub asking the company to remove a GDP video.  In the request, she stated that she "was told this video would never be online.  I did not consent to have this on Pornhub!  Please take this down.  It is ruining my life."  Pornhub responded and stated that the "following video(s) was/were uploaded by one of our Content Partners as part of our Content Partner Program" and directed the complainant to submit a DMCA takedown notice if she felt that the video violated copyright and wished to pursue the video removal.

(e)     On or about June 16, 2019, a complainant submitted a content removal request to Pornhub, stating that she "was lied to in order for this video to be filmed."  On June 17, 2019, Pornhub informed the complainant that the video had been removed.

18.     In or about and between June and July 2019, MindGeek executives also became aware, through public sources, that the GDP Lawsuit was proceeding to trial over allegations that women were tricked into making the GDP videos.  For example, on or about June 28, 2019, a senior MindGeek employee received an alert of a VICE article titled, "Girls Do Porn Goes to Trial Over Allegations Women Were Tricked into Videos."  The article was circulated and discussed among MindGeek's employees, including senior executives.

19.     In or about and between late June and July of 2019, MindGeek executives discussed whether to remove the GDP videos implicated in the GDP Lawsuit.  On July 15, 2019, a senior MindGeek employee explained that she has "contacted [Pratt] and let him know that we would suspend their channel at the end of the week if we don't hear back."

20.     On or about July 18, 2019, MindGeek separately contacted plaintiffs' counsel in the GDP Lawsuit and requested a list of GDP content that the company should remove from its website.  MindGeek then removed the videos identified by plaintiffs' counsel.

21.     MindGeek did not deactivate, suspend or remove the official GDP and GDT channels at that time.  Instead, on or about July 19, 2019, several MindGeek executives identified GDP as an "untrusted partner."  Specifically, a senior MindGeek employee emailed another senior MindGeek employee and stated that GDP was on its list of "untrusted partners." The MindGeek executives agreed that with respect to an "untrusted partner," upon receiving any complaints from the individuals who appeared in the videos, MindGeek would "inactivate the videos immediately and reach out to the Content Partner to tell them we've taken down the

video.  If they contest it, it will be case by case.  For full DMCA requests, we will DMCA the video and the partner can counter."  MindGeek left the GDP and GDT channels on MindGeek's websites.

22. On or about August 20, 2019, the bench trial in the GDP Lawsuit commenced in San Diego Superior Court.  Throughout the trial, MindGeek employees reviewed news media articles reporting on the trial.  For example, on or about August 30, 2019, a senior MindGeek employee received a news article reporting that a GDP videographer, Theodore "Teddy" Gyi ("Gyi"), had testified during trial that he, at the direction of the GDP Operators, lied to women that their sex videos would not appear online so that the women would agree to appear in the videos.  The article further stated that videos Gyi shot were posted on MindGeek's Free Sites such as Pornhub and YouPorn.

23. On or about October 10, 2019, the U.S. Attorney's Office for the Southern District of California charged Pratt, Wolfe, Garcia and Valorie Moser by complaint on federal sex trafficking charges.  The criminal complaint specifically referenced Girls Do Porn and Girls Do Toys and also stated that pornographic videos posted to Girls Do Porn and Girls Do Toys were also posted on Pornhub.

24. On or about October 14, 2019, MindGeek, at the direction of its Chief Operating Officer, removed the official Girls Do Porn channel from its platforms.  However, MindGeek did not remove the official Girls Do Toys channels from its platforms or seek to identify for removal all unofficial Girls Do Porn content from its websites at that time.  As a result, users could still access numerous GDP videos on MindGeek's Free Sites, including Pornhub.

25. MindGeek did not receive any payments from the GDP Operators after October 2019, including for GDT content.

26. In or about November 2019, a federal grand jury returned an eight-count indictment against Pratt, Wolfe, Garcia, Gyi and other conspirators in the Southern District of California on charges of sex trafficking, conspiracy to commit sex trafficking, and production of child pornography.

27. After the above referenced individuals were indicted, between November 2019 and January 2020, MindGeek continued to receive complaints from individuals seeking to remove GDP content from its platforms. For example, in November 2019, one individual contacted Pornhub and explained that while Pornhub had removed the official channel, a simple search for "Girls Do Porn" or "GDP" on the website produced clips and compilations uploaded from Pornhub users. Later, MindGeek removed all identified videos from its sites.

28. On or about January 2, 2020, the court in the GDP Lawsuit issued a public Statement of Decision, finding the GDP Operators liable. The Statement of Decision explained that the GDP Operators used a number of fraudulent and threatening practices to recruit women to make pornographic images, including posting misleading ads to recruit women, falsely promising more pay than they intended, lying to the women about how, where and to whom their videos would be distributed and using coercive tactics to force the women to perform sex when necessary. The court noted that with respect to Girls Do Toys, "the women are usually the same as those who shoot boy-girl GDP videos because [the GDP Operators] do not separately recruit women for solo videos."

29. On or about January 3, 2020, a MindGeek executive received notification of the decision through a news alert with a link to an article titled, "Girls Do Porn Has to Pay Millions in Damages for Coercing Women Into Porn."

30. On or about January 23, 2020, four MindGeek executives received an email from MindGeek's external consultant. MindGeek's external consultant forwarded the executives a list of email inquiries from VICE magazine, including the following inquiry: "Girls Do Toys, a site that is owned and operated by the same people that own and operate Girls Do Porn, still has an official channel on Pornhub. Some of the women in the Girls Do Toys videos are the same women from the Girls Do Porn videos. Why has Pornhub allowed this channel to remain on its platform?"

31. On or about February 10, 2020, Pornhub conducted a sweep to remove all existing GDP content from its site. Nonetheless, users continued to post GDP-created content on Pornhub. In or about and between May 2020 and December 9, 2020, MindGeek continued to receive content takedown requests from individuals seeking to remove user-posted GDP video content. After receiving the requests, MindGeek then removed the identified videos.

32. On or about June 18, 2020, a senior MindGeek employee forwarded to a MindGeek executive a May 1, 2019 email that had originally been sent from Pratt to a Pornhub account representative. In the forwarded email, which discussed a female complainant who had submitted to MindGeek a content removal request to remove her GDP video, Pratt informed the Pornhub representative that the female complainant had also appeared in a GDT video.

33. MindGeek did not remove the official GDT channel from its websites until on or about December 16, 2020, even though the company knew that the individuals

11

operating GDT were the same as those who operated GDP and that many of the individuals featured in GDP videos were also used to produce GDT content.

## UNLAWFUL MONETARY TRANSACTIONS

34. The allegations contained in paragraphs one through 33 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between September 15, 2017 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant AYLO HOLDINGS S.À.R.L., formerly known as "MindGeek S.à.r.l.," did knowingly and intentionally engage in one or more monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000, which transactions in fact involved the proceeds of specified unlawful activity, to wit: sex trafficking, in violation of Title 18, United States Code, Section 1591.

(Title 18, United States Code, Sections 1957 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

36. The United States hereby gives notice to the defendant that, upon its conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

37. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

    (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2020R01135  
FORM DBD-34  
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

AYLO HOLDINGS S.À.R.L, formerly known as "MindGeek S.à.r.l.,"

Defendant.

## INFORMATION

T. 18, U.S.C., §§ 982(a)(1), 982(b)(1), 1957, and 3551 et seq.; T. 21, U.S.C., § 853(p)

*A true bill.*

_____  
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____  
*Clerk*

*Bail, $* _____

_____

*Hiral D. Mehta, Genny Ngai, Gillian Kassner and Tara B. McGrath*  
*Assistant U.S. Attorneys (718) 254-7000*